HARDIMAN, Circuit Judge,
dissenting in part.
I agree with my colleagues that the District Court did not err when it granted injunctive relief to Appellee W.S. International, LLC (WSI) in Case No. 11-2574. I disagree, however, that we lack jurisdiction over the District Court’s order transferring the case to the United States District Court for the Northern District of Illinois in Case No. 13-1518. Accordingly, I respectfully dissent in that case.
I
The majority acknowledges that we may exercise mandamus jurisdiction over the *198 District Court’s transfer order. Nevertheless, after faulting Zook for not filing a petition for writ of mandamus, my colleagues summarily conclude: “[ujnder the circumstances of this case, we find no compelling reason to stray from our general rule [that orders transferring venue are not immediately appealable].” Maj. Typescript at 195. On that thin reed, the Court declines to exercise jurisdiction over Zook’s appeal in Case No. 13-1518.
A brief review of the procedural history of these consolidated appeals demonstrates why Zook’s failure to file a petition for writ of mandamus was perfectly appropriate. On April 26, 2013, the Clerk of this Court issued an order that invited Zook and WSI to “consider whether the notice of appeal should be treated as a petition for a writ of mandamus” and to discuss the merits of that petition. JA at 417-18. The parties responded to the Clerk’s inquiry by letter dated May 31, 2013, in which they jointly asked us to construe Zook’s notice of appeal as a petition for writ of mandamus. They did so in an effort to “reduce the paperwork burden and confusion ... imposed by a separate filing for a writ, the subsequent motion to consolidate with this appeal, and the potential for overlapping briefing.” JA at 419. Thus, while the parties have always disagreed about the merits of mandamus relief, they never disputed our jurisdiction to review the propriety of the District Court’s transfer order. Indeed, both Zook and WSI referenced in their appellate briefs the agreement they had struck to have the notice of appeal treated as a petition for writ of mandamus. See Zook Br. at 6 n. 1 (noting that “[t]he parties agree this Court should consider the notice of appeal as a petition for writ of mandamus”); WSI Br. at 1 & n. 2 (“The [transfer order] is properly before this court on a petition for writ of mandamus” and “Zook initiated the appeal by filing a notice of appeal which the parties agreed should be treated as a petition for writ of mandamus.”). I would reward, not punish, this salutary cooperation between counsel. Of course, this does not mean, as my colleagues suggest, that we should “find jurisdiction simply because the parties agree we should.” Maj. Typescript at 195. Rather, I believe it an abuse of discretion for this Court, in derogation of the express agreement reached by the parties at our suggestion, to fail to construe Zook’s notice of appeal as a petition for writ of mandamus.
II
The fact that we have mandamus jurisdiction is, of course, a far cry from deciding that such extraordinary relief should be granted. Although mandamus is “the appropriate mechanism for reviewing an allegedly improper transfer order,” Sunbelt Corp. v. Noble, Denton & Assocs., 5 F.3d 28, 30 (3d Cir.1993), the party seeking the writ must demonstrate clear legal error that “approaches] the magnitude of an unauthorized exercise of judicial power.” Carteret Sav. Bank, F.A. v. Shushan, 919 F.2d 225, 232-33 (3d Cir.1990). To satisfy this heavy burden, the petitioner must show that it has no other adequate means of obtaining the relief sought, and it has a “clear and indisputable” right to the writ. Cheney v. United States District Court, 542 U.S. 367, 380-81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (internal quotation marks and citation omitted). The issuing court then must be satisfied that the writ is appropriate under the circumstances. See id. Zook has satisfied these criteria.
The first factor is easily satisfied because the very nature of the transfer order deprives Zook of the ability to otherwise obtain the relief it seeks. In Carteret, we held that the possibility of an appeal in the *199 transferee forum following a final judgment there is not an adequate alternative for relief. 919 F.2d at 283; see also Sunbelt, 5 F.3d at 30. A holding to the contrary would “lead to a conclusion that mandamus is never available in the transferor circuit as an appeal will be possible at the conclusion of the proceedings in the transferee district court.” Carteret, 919 F.2d at 233 n. 15. Because we will lose jurisdiction over the case once it is transferred, there is no other adequate means to avoid the transfer besides a writ of mandamus. See id. at 233. Accordingly, I turn to the second factor, viz., whether Zook has a “clear and indisputable” right to the writ.
The District Court’s decision to transfer the case to the Northern District of Illinois rests entirely on a purported confidentiality agreement between the parties (Form 3). This document included a forum-selection clause, which provided that all disputes would be litigated in Illinois courts. In its motion for leave to file a second amended complaint, WSI had attached a copy of Form 3 as an exhibit and incorporated the venue provision into the pleadings. The District Court noted that the agreement was “of dubious existence.” JA at 412. Nonetheless, despite Zook’s repeated protestations that no confidentiality agreement existed, the District Court accepted Form 3 as a binding contract between the parties. This conclusion was particularly strange in light of the fact that when the Court suggested there was no confidentiality agreement, counsel for WSI responded, “correct.” JA at 338. Instead of analyzing whether Form 3 was a valid contract, the District Court relied on a procedural point, viz., that Zook had not objected to WSI’s motion to file an amended complaint. To the District Court, this meant that Zook had acceded to the content of the complaint and “the parties have reached accord that [Form 3] represents their Confidentiality Agreement.” JA at 412. The District Court repeated this reasoning in denying Zook’s motion for reconsideration. This was clear legal error, as the record demonstrates that Zook never agreed to any of the terms of Form 3, including its forum-selection clause:
It is hornbook law that a valid contract requires offer, acceptance, and consideration. Jenkins v. Cnty. of Schuylkill, 441 Pa.Super. 642, 658 A.2d 380, 383 (1995). Acceptance of an offer must be unconditional; if the offeree alters the terms of the offer, it has made a counter-offer, and a contract is not formed. First Home Sav. Bank, FSB v. Nernberg, 436 Pa.Super. 377, 648 A.2d 9, 15 (1994). Here, while the parties contemplated a formal written confidentiality agreement, they engaged in a “battle of the forms” that was never resolved. After WSI proposed Form 2, a draft version of the confidentiality agreement, Zook responded with Form 3, which included material changes to Form 2. Form 3 thus constituted a counter-offer by Zook. WSI declined to accept Zook’s Form 3 by submitting Form 4, another proposed agreement, almost two years later. This too was a counter-offer, which Zook never accepted. Thus, at no point did the parties enter into a valid contract that contained the forum-selection clause, and it was plain error for the District Court to hold otherwise.
The District Court appeared to apprehend the basic analysis I have outlined when it noted that Form 3 was a “Confidentiality Agreement of dubious existence.” JA at 412. Nevertheless, the District Court did an end run around the contract formation analysis, instead construing Zook’s failure to object to WSI’s motion for leave to file a second amended complaint as an admission that the complaint’s contents were true. This inference wrongly conflated Zook’s acquiescence as to WSI’s ability to file the complaint with *200 its agreement as to the substance of that pleading. This was a fundamental error: Zook not only was under no obligation to oppose WSI’s Rule 15 request, but also had no meritorious grounds to do so. Indeed, if it had objected, it could have been subject to Rule 11 sanctions.[1] Rather, the opportunity to either admit or deny allegations in the amended complaint would have been ripe only after that document had been filed. See Fed.R.Civ.P. 12(a), (b), (h) (providing that the defendant answers to pleadings after being served with the complaint).
WSI tacitly admits that the District Court erred in this regard, but counters that any error committed by the District Court in ordering the transfer does not rise to the “clear error” required for issuing a writ. Instead, it asserts that “the District Court already considered and rejected Zook’s arguments for clear error in ruling on Zook’s motion for reconsideration under Fed.R.Civ.P. 59(e) and 60(b).” WSI Br. at 22 (referring to SA 58-63 (order and memorandum opinion denying motion for reconsideration)). But the District Court’s denial of Zook’s motion for reconsideration rested on the very same mistaken premise as its initial order transferring venue. The fact that the District Court committed the same error not once but twice in no way insulates it from a finding by this Court that it committed a “clear error of law” that should be remedied.[2]
When the aforementioned reasons are considered in light of the fact that WSI initially chose to file in the Eastern District of Pennsylvania, I am satisfied that a writ of mandamus is appropriate under these circumstances. WSI averred that venue was proper in the Eastern District of Pennsylvania on three separate occasions. Only after the District Court denied its emergency motion for a preliminary injunction did WSI seek to transfer the case, and its basis for the motion to transfer had nothing to do with changed circumstances relating to witnesses, documents, the fondant wheel, et cetera. Rather, its sole ground for the transfer was the forum-selection clause in Form 3 which, for the reasons I have explained, was not part of an enforceable contract. Because I would not honor WSI’s transparent at *201 tempt to forum-shop, I respectfully dissent in Case No. 13-1518.

. Under Rule 15, a defendant could object to a motion for leave to amend based on "undue delay, bad faith, dilatory motive, prejudice, and futility.” In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997). "Prejudice under Rule 15 means undue difficulty in prosecuting [or defending] a lawsuit as a result of a change of tactics or theories on the part of the party.” Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1189 n. 8 (3d Cir.1994) (citing Deakyne v. Commis. of Lewes, 416 F.2d 290, 300 n. 19 (3d Cir.1969)) (alterations in original omitted).
When WSI filed its motion, discovery was ongoing. An amendment would not cause undue delay or be prejudicial, as trial was not yet imminent and a part of the action (the TRO) was on appeal to the Third Circuit. Thus, Zook had no basis to object to the amendment request.

. WSI further contends that the District Court had authority for its order under 28 U.S.C. § 1404(a), which permits transfer to any venue where the action might have been brought. The District Court's decision relied not on § 1404(a), but on the non-existent confidentiality agreement. And although Zook’s argument that we should not consider this point defies our repeated statement that "[a]n appellate court may affirm a result reached by the district court on different reasons, as long as the record supports the judgment,” Guthrie v. Lady Jane Collieries, Inc., 722 F.2d 1141, 1145 n. 1 (3d Cir.1983) (citing Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937)), Zook argues persuasively that the Eastern District of Pennsylvania is a more convenient venue because of the location of the witnesses, documents, and the fondant wheel that gave rise to the parties’ dispute.